AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>ROBERT HOWARD LAWRENCE II<br><br>Defendant(s) | Case No.<br>5:23-mj-1078-PRL |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
Between on or about April 2018 to on or about April 2023 in the county of Citrus in the Middle District of Florida, and elsewhere, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 641 | Theft of government funds |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Special Agent Luke S. Puleo, VA OIG
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: April 20, 2023

*Judge's signature*

City and state: Ocala, Florida

Philip R. Lammens, United States Magistrate Judge
*Printed name and title*

**STATE OF FLORIDA**  CASE NO. 5:23-mj-1078-PRL

**COUNTY OF MARION**

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Luke S. Puleo, being duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1.  I am a special agent with the United States Department of Veterans Affairs ("VA"), Office of Inspector General ("OIG"). I have been employed as a federal law enforcement officer for more than one year and have served as a Special Agent with the VA-OIG since 2022.

2.  During my tenure as a federal law-enforcement officer, I have investigated and assisted in the investigation of numerous criminal matters, including, pertinently, matters that involves theft of government funds. I have received training, and regularly update my training, regarding the same. I am also a graduate of the Federal Law Enforcement Training Center.

3.  As a Special Agent for VA-OIG, I am authorized to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code, including 18 U.S.C. § 641, relating to theft of government funds.

4.  This affidavit is in support of a criminal complaint. The information set forth in this affidavit is based on my personal participation in this investigation, information provided to me by other individuals including other law enforcement officers, my review of records, reports, and documents related to this investigation,

and communications with other individuals who have personal knowledge of the events and circumstances described herein. Because this affidavit is submitted for the limited purpose of establishing probable cause to support a criminal complaint, I have not included details of all aspects of my investigation. I have set forth only those facts I believe are necessary to establish probable cause to charge ROBERT HOWARD **LAWRENCE** II with theft of government funds, in violation of 18 U.S.C. § 641.

## Probable Cause

*VA Dependency and Indemnity Compensation*

5. The VA Dependency and Indemnity Compensation ("DIC") program furnishes a monthly benefit paid to eligible survivors of military service members. DIC payments are available for surviving spouses. To be an eligible surviving spouse and receive DIC payments, the surviving spouse must have (1) been married to the military service member for at least one year, (2) had a valid marriage, (3) lived with the military service member continuously until his/her death or, if separated, the surviving spouse was not at fault for the separation, and (4) not remarried. If a surviving spouse remarries, the spouse is no longer eligible to receive DIC benefits. The surviving spouse remains ineligible to receive DIC benefits whether or not the new marriage is successful.

*LAWRENCE's VA DIC benefits*

6. **LAWRENCE** was married to a military service member. His wife, J.C., was a soldier in the United States Army. J.C. died on November 28, 1994. On

or about February 13, 1995, the VA determined J.C.'s death to be connected to her military service. A letter dated March 23, 1995, was mailed to **LAWRENCE** notifying him that he was awarded DIC benefits as J.C.'s surviving spouse. His compensation had a retroactive effective date of November 1, 1994.

7. The VA mailed a Marital Status Questionnaire to **LAWRENCE** at his home in Duval County, in the Middle District of Florida. **LAWRENCE** completed and signed the questionnaire on or about April 4, 2003. In the questionnaire, he stated that he had not remarried since J.C.'s death in 1994.

8. The VA mailed a letter to **LAWRENCE** at his home in Orange County, in the Middle District of Florida. The letter dated December 28, 2007, informed him that he is required to notify the VA if there is a change in his marital status. The VA mailed a second letter to **LAWRENCE** at the same residence dated December 29, 2008, informing him that he is required to notify the VA if there is a change in his marital status.

9. The VA mailed a second Marital Status Questionnaire to **LAWRENCE** at the same residence. **LAWRENCE** completed and signed the questionnaire on or about May 12, 2011. In the questionnaire, he stated that he had not remarried since J.C.'s death in 1994.

10. The VA mailed a letter to **LAWRENCE** dated May 27, 2020, proposing to stop his DIC payments within 60 days if he failed to verify whether he had remarried. VA mailed a letter to **LAWRENCE** at his Citrus County residence

in the Middle District of Florida. **LAWRENCE** is currently a resident of Citrus County. He has been a resident of the Middle District of Florida since April 2000. In the letter dated December 4, 2020, the VA discussed how **LAWRENCE** verified by telephone that he had not remarried since J.C.'s death.

11.     On or about December 12, 2022, M.R. reported to the VA-OIG hotline that he was **LAWRENCE's** brother-in-law in **LAWRENCE's** new marriage with D.L. M.R. advised that **LAWRENCE** was receiving DIC benefits to which he was not entitled because he had remarried.

12.     On January 13, 2023, I received **LAWRENCE's** marriage certificate pertaining to his marriage with D.L. The certificate indicated that **LAWRENCE** married D.L. on or about November 7, 1995, in Lampasas County, Texas. **LAWRENCE** never reported this marriage to the VA. In fact, in 2003 and 2011, he reported to the VA in Marital Status Questionnaires that he had not remarried. In 2020, **LAWRENCE** notified the VA through the telephone that he had not remarried. As such, he continued to receive DIC benefits.

13.     Not only had **LAWRENCE** remarried, but he was in the process of getting a divorce at the time M.R. called the VA-OIG hotline in December 2022. On January 18, 2023, I obtained court records for **LAWRENCE's** divorce proceedings in Citrus County, Florida.

14.     I obtained the Order on Petitioner's Motion to Determine Validity of Marriage, dated December 13, 2021, which found **LAWRENCE** and D.L.'s

4

marriage to be valid. I also obtained a Motion for Relief from Marital Settlement Agreement and or Motion to Set Aside, Void and or Otherwise Invalidate Martial Settlement Agreement and Related Relief, dated July 27, 2021, which indicated that **LAWRENCE** failed to disclose his VA DIC payments in his financial affidavit during the divorce proceedings.

15. In a subsequent financial affidavit, dated February 17, 2022, **LAWRENCE** indicated that he received $1,437.66 a month through a pension, retirement, or annuity payment.

16. On February 27, 2023, pursuant to a grand jury subpoena, I received records from a financial institution ("Bank 1") related to **LAWRENCE's** bank account. The records revealed that **LAWRENCE** received monthly DIC payments that were electronically wired into his bank account. He received DIC payments into this account from October 2004 to September 2015.

17. On March 7, 2023, pursuant to a grand jury subpoena, I received records from a financial institution ("Bank 2") related to **LAWRENCE's** bank account. The records revealed that **LAWRENCE** received monthly DIC payments that were electronically wired into his bank account. Based on the date of the subpoena, the records show **LAWRENCE** received DIC payments into this account from December 2016 through February 2023. As of the date of this affidavit, the DIC payments have not stopped.

18. On April 3, 2023, another special agent with VA-OIG and I interviewed M.R. He indicated that he first met **LAWRENCE** in 1994 while **LAWRENCE** was dating D.L. At the time, **LAWRENCE** was still married to active-duty military service member J.C. Shortly after J.C. died, **LAWRENCE** and D.L. married in 1995. **LAWRENCE** and D.L. were married until July 2022. During the divorce proceedings, D.L. learned **LAWRENCE** had been receiving DIC payments from VA since J.C. died. When confronted during the divorce proceedings about receiving DIC payments when he was no longer entitled to them, **LAWRENCE** stated he did not notify VA of his new marriage because he used the DIC payments to take care of his stepchildren. M.R. said **LAWRENCE** remarried again. **LAWRENCE** married J.D. on February 3, 2023.

19. On April 12, 2023, another special agent with VA-OIG and I interviewed D.L. She indicated that she first met **LAWRENCE** in September 1994. D.L. stated that she married **LAWRENCE** in Lampasas County, Texas, on November 11, 1995. While married, they notified the federal government about their marriage by filing their taxes jointly as a married couple, but **LAWRENCE** never notified the VA that he remarried. D.L. advised that she was unaware **LAWRENCE** received DIC payments. **LAWRENCE** filed for divorce in Citrus County, Florida, in July 2021. Their divorce was finalized in July 2022. During their separation, D.L. found VA documents in **LAWRENCE's** desk. The VA documents indicated that **LAWRENCE** was supposed to report to VA if he

remarried. D.L. provided this information to her lawyer. When questioned in court about the DIC payments, **LAWRENCE** said he did not notify the VA that he remarried because he was taking care of three kids. D.L. advised that **LAWRENCE** remarried again. **LAWRENCE** married J.D. on February 3, 2023.

20.   From November 7, 1995, when **LAWRENCE** remarried until April 1, 2023, the VA continued electronically depositing monthly DIC payments into his bank accounts. **LAWRENCE** was ineligible to receive these payments. He only received the payments because he failed to report to the VA that he remarried in 1995. By affirming on Marital Status Questionnaires in 2003 and 2011 that he had not remarried and by confirming on the telephone in 2020 that he had not remarried, **LAWRENCE** willfully concealed his marriage from the VA. Between April 2018 and April 2023, **LAWRENCE** received $76,836.20 in overpayments.

21. Based on the foregoing, I submit that there is probable that **LAWRENCE** violated 18 U.S.C. § 641, relating to theft of government funds, between on or about April 2018 to on or about April 2023.

This completes my Affidavit.

Luke Salvatore Puleo
Special Agent
U.S. Department of Veterans Affairs

Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by telephone. on April 20, 2023.

Philip R. Lammens
United States Magistrate Judge